WHEC, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 87133. Filed January 24, 1962.

*Thomas C. Taylor, Esq.*, for the petitioner.
*Dean P. Kimball, Esq.*, for the respondent.

### OPINION.

Arundell, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $16,285.45.

The only error assigned is as follows:

(1) The Commissioner erroneously disallowed the deduction of $31,318.17 as ordinary and necessary business expense paid or incurred in 1956 by petitioner; the petitioner, having obtained a construction permit for a television station in March, 1953 and having operated a television station since November, 1953, protected its right to continue in business and defended its business interests against attack in 1956 proceedings before the Federal Communications Commission and in court; the expenses in question were paid or incurred in connection with these proceedings, litigation, and related matters.

All the facts were stipulated and are so found.

Petitioner is a New York corporation with its principal office in Rochester. Its Federal income tax return for the calendar year 1956 was filed with the district director of internal revenue at Buffalo, New York.

In February 1948 petitioner, which had been in the radiobroadcasting business since 1931, filed with the Federal Communications Commission (herein sometimes referred to as FCC) an application for a construction permit for a new television broadcasting station to operate on channel 2 in Rochester. It later amended its application to specify channel 10 instead of channel 2.

In January 1952 Veterans Broadcasting Company (herein sometimes referred to as Veterans) also filed with the FCC an application for a construction permit to operate on channel 10.

The original applications of petitioner and Veterans were mutually exclusive.

In early March 1953 petitioner and Veterans entered into a share-time agreement for the use of channel 10 and amended their applications to reflect the share-time agreement on March 4 (Veterans) and March 5 (petitioner).

On March 11, 1953, the applications, as amended, were granted by the FCC without a hearing, at which time there were no other appli-

cations on file requesting the use of channel 10 in Rochester. On March 12, 1953, the FCC gave public notice of the grants made on the previous day.

At the time these applications were granted, as set forth above, section 309(c) of the Communications Act of 1934, as amended by section 7 of Communications Act Amendments, 1952 (66 Stat. 711, 715) provided as follows:

(c) When any instrument of authorization is granted by the Commission *without a hearing* as provided in subsection (a) hereof, *such grant shall remain subject to protest* as hereinafter provided *for a period of thirty days.* During such thirty-day period any *party in interest* may file a protest under oath directed to such grant and request a *hearing on said application so granted.* Any protest so filed shall contain such allegations of fact as will show the protestant to be a party in interest and shall specify *with particularity the facts, matters, and things relied upon*, but shall not include issues or allegations phrased generally. The Commission shall, within fifteen days from the date of the filing of such protest, enter findings as to whether such protest meets the foregoing requirements *and if it so finds the application involved shall be set for hearing* upon the issues set forth in said protest, together with such further specific issues, if any, as may be prescribed by the Commission. In any hearing subsequently held upon such application all issues specified by the Commission shall be tried in the same manner provided in subsection (b) hereof, but with respect to all issues set forth in the protest and not specifically adopted by the Commission, both the burden of proceeding with the introduction of evidence and the burden of proof shall be upon the protestant. The hearing and determination of cases arising under this subsection shall be expedited by the Commission *and pending hearing and decision the effective date of the Commission's action to which protest is made shall be postponed to the effective date of the Commission's decision after hearing, unless* the authorization involved is necessary to the maintenance or conduct of *an existing service*, in which event the Commission shall authorize the applicant to utilize the facilities or authorization in question pending the Commission's decision after hearing. [Emphasis supplied.]

On March 17, 1953, Federal Broadcasting System, Inc. (herein sometimes referred to as Federal), filed a protest to the grants to petitioner and Veterans, and also filed its own application for a construction permit for a television station to operate on channel 10 in Rochester.

On March 27, 1953, petitioner and Veterans filed with the FCC a "Reply and Motion to Strike 'Protest to Grant of Applications, and Request for Hearing' and Motion to Return Application of Federal Broadcasting System, Inc. to Applicant."

On March 31, 1953, Federal filed a reply to the motion to strike.

On April 1, 1953, the FCC adopted a Memorandum Opinion and Order, the concluding paragraphs of which are as follows:

6. We have decided above that protestant, alleging economic injury as a licensee of a standard broadcast station in Rochester, has standing herein as a party in interest. However, we think that protestant, when it requests that

the subject applications be designated for hearing in a consolidated proceeding with its application, misconceives the purpose and requirements of Section 309(c). Section 309(c) does not say that upon the filing of a protest which meets the requirements of that section, the Commission's action will be vacated or set aside; Section 309(c) provides that "the effective date of the Commission's action to which protest is made shall be postponed to the effective date of the Commission's decision after hearing." Cf. *KFAB Broadcasting Co.* v. *Federal Communications Commission*, 177 F. 2d 40.

7. Accordingly, in view of the foregoing, IT IS ORDERED, THAT, effective immediately, the effective date of the grants of the above-entitled applications is postponed pending final determination by the Commission with respect to the protest of Federal Broadcasting System, Inc., and that pursuant to the provisions of Section 309(c) of the Communications Act, as amended, said applications are designated for hearing at a time and place, and upon appropriate issues, to be designated by further order of the Commission.

On and after April 20, 1953, several motions were filed with the FCC requesting reconsideration of its April 1, 1953, action, and on July 27, 1953, the FCC released another Memorandum Opinion and Order saying in part "it is our opinion that the Federal pleading did not state facts sufficient to constitute a protest within the meaning of Section 309(c) and that the effective date of the grants to WHEC and Veterans should not have been postponed" and that "IT IS ORDERED, This 27th day of July, 1953 * * * that the postponement of the effective date of the grants to WHEC, Inc. and Veterans * * * IS TERMINATED and said grants are MADE EFFECTIVE immediately * * *."

On August 18, 1953, Federal filed a petition for reconsideration, relying on newly found facts relative to the alleged invalidity of the grants made by the FCC on March 11, 1953.

By the fall of 1953 petitioner and Veterans had completed the construction of broadcasting facilities and in November 1953 broadcasting was begun on channel 10 and has continued ever since.

On May 3, 1954, Federal's petition for reconsideration, filed on August 18, 1953, was denied, both on the ground that the FCC could not act on facts presented after the expiration of the 30-day period allowed for filing a protest under section 309(c), and that the facts set forth in Federal's petition for reconsideration, if considered on the merits, did not constitute a reason for reinstating Federal's protest. Federal then appealed to the United States Court of Appeals for the District of Columbia.

On July 28, 1955, the Court of Appeals for the District of Columbia reversed the FCC and remanded the case for further proceedings consistent with the court's opinion and, in so doing, held, among other things, that the protest filed by Federal on March 17, 1953, *had* specified "with particularity the facts, matters, and things relied upon" as provided in section 309(c) and that therefore under that section the FCC should have set the applications down for hearing and post-

poned the effective date of the March 11, 1953, grants pending the hearing and decision on the protest. See *Federal Broadcasting System* v. *Federal Communications Commission*, 225 F. 2d 560, certiorari denied 350 U.S. 923 (1955).

On January 20, 1956, section 309(c) was amended by Congress. See Pub. L. No. 391, 70 Stat. 3. A part of this amendment was the *addition* of a second "unless" clause to the last sentence of section 309(c) so as to make that part of section 309(c) read as follows (the italicized portion is the addition) :

unless the authorization involved is necessary to the maintenance or conduct of an existing service, *or unless the Commission affirmatively finds for reasons set forth in the decision that the public interest requires that the grant remain in effect,* in which event the Commission shall authorize the applicant to utilize the facilities or authorization in question pending the Commission's decision after hearing.

Prior to the above amendment, a station which had begun to operate as a result of an authorization without a hearing but which later became the subject of a valid protest which required a hearing was not deemed by the FCC to be "an existing service" within the meaning of section 309(c).

On February 24, 1956, the FCC held that pending final determination of the protest, the operation of channel 10 would be in the public interest, and that the protested grants would not be stayed pending the outcome of the hearing.

Federal appealed the above February 24, 1956, order to the United States Court of Appeals for the District of Columbia. Some of the expenses in question were incurred in connection with this litigation and related matters.

On November 15, 1956, the Court of Appeals for the District of Columbia held that the action of the FCC in permitting continued operations by petitioner and Veterans pending the hearing was proper in view of the change in section 309(c) of the Communications Act of 1934 on January 20, 1956. The court also held that this change in the law applied retroactively, permitted the utilization of a facility under a grant issued without a hearing, and duly protested even though it did not involve "an existing service," and that there was no want of due process against Federal. See *Federal Broadcasting System* v. *Federal Communications Commission*, 239 F. 2d 941.

The hearings required by the July 28, 1955, decision of the Court of Appeals for the District of Columbia were held in 1956, and some of the expenses in question were incurred in connection with these hearings.

On March 12, 1958, the FCC issued its decision based on the hearings and affirmed the grants of March 11, 1953, to petitioner and Veterans,

he opinion being reported at 24 F.C.C. 147, and in so doing determined that the grant of petitioner's application would not result in a concentration of mass media contrary to the public interest; also that the public interest would be served by the granting of petitioner's application; also, that petitioner and Veterans were qualified and by their share-time agreement, advertising practices, or refusals to grant rebroadcasting, had not shown themselves to be unqualified.

During 1956, in connection with the foregoing, petitioner paid or incurred legal, engineering, and research expenses totaling $31,318.17.

On June 15, 1960, a station license was issued to petitioner.

For the calendar year 1956 petitioner filed a Federal income tax return in which it claimed as a deduction the expenses totaling $31,318.17.

The respondent in his determination disallowed the claimed deduction and in a statement attached to the deficiency notice explained his disallowance thus:

(a) It is held that the amount of $31,318.17 included in other business deductions totaling $77,576.08 is not allowable for the reason that it is not an ordinary and necessary business expense within the meaning of Section 162(a) of the 1954 Code.

It may be noted at the outset that the parties have not itemized the expenditures of $31,318.17. They agree, however, that the entire amount is either deductible in full or should be capitalized in full. It is a question of all or nothing.

Petitioner contends that the expenditures are deductible under section 162(a) of the Internal Revenue Code of 1954.[1] Its position is that since all the expenditures in question were incurred subsequent to the granting of the construction permit on March 11, 1953, and subsequent to the commencement of actual broadcasting on channel 10 in Rochester in November 1953, the expenditures should be considered as representing ordinary and necessary expenses paid or incurred in defending a right to continue in business or in defending a business interest against attack. In support of this position petitioner cites *Commissioner* v. *Heininger*, 320 U.S. 467; and *All States Freight* v. *United States*, 72 F. Supp. 673 (N.D. Ohio 1947). In the latter case the court succinctly stated the law applicable to franchises and licenses as follows:

The investment by which the property or license is acquired is a capital investment, but the expenditure necessary to maintain the property and protect it from attack or loss is expense.

Under this statement of the law, our problem becomes primarily a

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

question of ultimate fact, namely, whether, at the time the expenditures were made in 1956, petitioner had fully perfected its right to broadcast on channel 10 in Rochester or whether it was still in the process of acquiring that right. We think the latter is the fact. It was not until the decision of the FCC on March 12, 1958, became final that petitioner's right to broadcast became fully perfected. Until that time petitioner was in the process of acquiring a right to broadcast. The grant to petitioner in 1953 without a hearing was made "subject to protest." A valid protest was filed within the designated period and was still pending at the time the expenditures were made. The expenditures of $31,318.17 were made in perfecting the right to broadcast on channel 10 and not in defending such a previously fully acquired right.

We find and hold the expenditures to be capital in nature and not deductible under section 162(a), *supra*. See sec. 263, I.R.C. 1954; *Radio Station WBIR, Inc.*, 31 T.C. 803; *KWTX Broadcasting Co.*, 31 T.C. 952, affirmed per curiam 272 F. 2d 406 (C.A. 5, 1959).

*Decision will be entered for the respondent.*