### WDEF BROADCASTING COMPANY
### v.
### UNITED STATES of America.
### Civ. A. No. 3686.

United States District Court
E. D. Tennessee, S. D.
April 4, 1963.

Witt, Gaither, Abernathy, Caldwell & Wilson, Chattanooga, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., Hubert M. Doster, Department of Justice, Tax Division, Washington, D. C., for defendant.

FRANK W. WILSON, District Judge.

This is an action for recovery of taxes alleged to have been erroneously and illegally assessed against the plaintiff. The sole question remaining for decision is as to whether the sum of $21,787.17, expended by the plaintiff for expenses incurred in acquiring a television construction permit and a television license, may be amortized for income tax purposes over the period of construction and the first three year period of the license.

The amount in controversy was expended during the fiscal year ended March 31, 1954, and the question presented is therefore governed by the Internal Revenue Code of 1939, as amended, and by Treasury Regulations promulgated thereunder.

Section 23(*l*) of the 1939 Code, as amended, provides that "In computing net income there shall be allowed as deductions: (*l*) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence.)—(1) of property used in the trade or business." Treasury

Regulation 118, Sec. 3923(1)–3, provides as follows:

> "*Depreciation of tangible property.* Intangibles, the use of which in the trade or business or in the production of income as definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. *Intangibles, the use of which in the business or trade or in the production of income is not limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner.* No deduction for depreciation, including obsolescence, is allowable in respect of good will. (Emphasis added.)

The Government relies upon the underlined portion of this regulation, and contends that a television license is not "known from experience to be of value * * * for only a limited period," since the Federal Communications Commission has never refused to grant an application for renewal of a television license.

In support of its position the Government cites Rev.Rul. 56–520, 1956–2 Cum. Bull. 170 as follows:

> "A corporation that operates a radio broadcasting station made expenditures during the course of and with respect to a contest, before the Federal Communications Commission, to determine whether it should be awarded permission to use a certain channel in connection with its proposal to operate a television broadcasting station. The expenditures consisted of legal, engineering and accounting fees, travel expenses of witnesses for hearings, and other expenses incident to the preparation of briefs for trial. Permission to use a television channel is renewable periodically by the Federal Communications Commission. *Held*, if the expenditures result in obtaining permission to use the television facility * * *, (2) since the useful life of the asset is of an indeterminate duration, a deduction for depreciation thereon is not allowable * * *."

In addition, the Government cites what appears to be the only instance in which this question has been passed upon by the courts, KWTX Broadcasting Co. v. Commissioner, 31 T.C. 952, affirmed per curiam 5 Cir., 272 F.2d 406. In that case the Tax Court, in denying relief of the kind sought here, relied upon the language underlined in Treasury Regulation 118 above, remarking that

> "While it is doubtless true that it will be within the power of the F.C.C. to refuse to grant a renewal of petitioner's television license when it comes up for renewal * * * nevertheless we think, * * * that it is altogether unlikely that the F.C.C. will deny petitioner's application for a renewal of its license."

Similarly, on appeal, the Court of Appeals for the Fifth Circuit noted that "The Commission has never refused to grant a renewal of a license once it has been granted," and held that

> "on the basis of the history of the regulation of the television industry by the Federal Communications Commission, it is 'not known from experience or other factors' that this intangible asset is of use in the business for only a limited period."

In response, the plaintiff contends that the factual situation has changed with regard to the practice of the Federal Communications Commission in renewing television licenses, citing in support of this contention a copy of the 28th Annual Report of the Federal Communica-

tions Commission, covering the fiscal year ended June 30, 1962. As stated in the plaintiff's brief:

"in the fiscal year of 1962 ending as of June 30, 1962, the Commission had, indeed, according to Page 46 of its 1962 report, forced WRCV AM-TV of Philadelphia, Pennsylvania, into a renewal proceeding which may or may not result in the failure of that television station to obtain a license renewal. A further statement within the 1962 report of the Commission indicates that as of June 30, 1962, 397 AM-FM and television renewal applications had been deferred pending investigation to determine whether the public interest was served by renewing said licenses. Finally, within this same report, the Commission issued twenty-four (24) license renewals for periods shorter than the normal three (3) years to certain stations whose violation record indicated a need for closer supervision. One of these twenty-four (24) was a television station in Mankato, Minnesota with the designation of KEYC-TV. The entire 1962 report of the Commission is a positive denial that television or radio licenses are a permanent asset to that business."

The plaintiff also argues that it is improper to look, as the courts did in the KWTX case, supra, to the practice of the Federal Communications Commission in renewing licenses, when the license in question is expressly limited to a term of three years. The plaintiff contends that the pertinent portion of Treasury Regulation 118 is not the portion cited by the Government (and underlined above), but rather the first portion thereof, which provides that

"Intangibles, the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses and franchises."

■ Aside from a possible change in the practice of the Federal Communications Commission in granting renewals of television licenses, the Court is disposed to agree with the plaintiff that the pertinent portion of Treasury Regulation 118 is that portion relied upon by the plaintiff, and that the material inquiry here is as to the stated term of the television license in question, rather than as to the custom or practice of the Federal Communications Commission in granting license renewals in other cases. It is a matter of common knowledge, and may be judicially noticed, that the power periodically to grant or refuse renewal of television licenses is the principal weapon in the regulatory arsenal of the Federal Communications Commission. It ill behooves the Government to serve its regulatory ends by granting licenses of a definite, limited duration, reserving the power to grant or refuse renewal, and at the same time to contend for tax purposes that the specified definite duration of such licenses should be disregarded.

The fact that there is little or no history of failure to renew licenses can only be interpreted as meaning that the licensees have merited renewal of their licenses. Any other interpretation would impugn the Federal Communications Commission in the administration of the law. To allow a tax consequence favorable to the taxpayer only when a history of license revocation for unsatisfactory broadcast performance is established, but to deny such tax treatment when a history of license renewals for satisfactory broadcast performance is established, would indeed be an anomalous result.

■ It is believed, therefore, that the plaintiff should be permitted to amortize, over the period of construction and the period of its initial television license, the $21,787.17 expended in acquiring its construction permit and television license.

An issue was initially raised by the taxpayer as to whether the licensing expense was deductible in the year of ex-

penditure as an ordinary expense. This contention, however, was abandoned by the plaintiff at the trial of the case.

All of the material facts to this decision are as admitted or stipulated in the pre-trial order, leaving only the foregoing question of law for decision by the Court. This Opinion will serve as a findings of fact and conclusions of law in this case. An order will enter accordingly.