**RICHMOND TELEVISION CORPORA-TION, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 9531.**

United States Court of Appeals Fourth Circuit.

Dec. 20, 1965.

Fred R. Becker, Atty. Dept. of Justice, (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, C. Vernon Spratley, Jr., U. S. Atty., and Samuel W. Phillips, Asst. U. S. Atty., on the brief), for appellant.

Robert T. Barton, Jr., and Horace D. McCowan, Jr., Richmond, Va. (Christian, Barton, Parker, Epps & Brent, Richmond, Va., on the brief), for appellee.

Before SOBELOFF, BRYAN and J. SPENCER BELL, Circuit Judges.

**SOBELOFF, Circuit Judge:**

This court has heretofore held that the taxpayer, Richmond Television Corporation, was not entitled to the claimed refund for the years 1956 and 1957. 345 F.2d 901. Its claim was based on an expenditure of $53,129.19, representing the cumulative cost of the training program conducted by it from 1953 to 1956, before it obtained its FCC license and commenced the operation of its broadcasting station. The facts of the case are set forth more fully in our opinion. For the reasons therein stated we reaffirm our holding that this sum is not a deductible business expense for the two years in question within the meaning of section 162(a). The expenditures in the advance training of a body of personnel created a capital asset, requiring different tax treatment.[1]

The taxpayer's amended complaint presented an alternative claim for relief. Richmond there contended that, if it was not entitled to deduct the sum as an ordinary and necessary business expense, it was entitled to amortize it over the life of the capital asset thereby created.

This court reserved the question of whether the taxpayer was entitled to amortize these costs, taking the view that the question was premature and not properly before us. However, the Supreme Court granted certiorari and ruled that the amortization claims for the years 1956 and 1957 were adequately raised and properly before us and remanded the case for consideration of those claims. 86 S.Ct. 233 (Nov. 8, 1965). We of course accept the correction of the Supreme Court and proceed to determine the taxpayer's right to amortization. The parties have submitted the issue, waiving further briefs or argument.

The parties are agreed that the controlling provision is section 167 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 167 (1954),[2] as implemented by Regulation 1.167(a)–3. The Regulation provides:

"If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. * * * *An intangible asset, the useful life of which is not lim-*

---

1. In addition to the authorities cited in our first opinion, we note two other cases. WHEC, Inc. v. Commissioner, 37 T.C. 821 (1962) (amounts paid to attorneys to acquire and perfect taxpayer's broadcasting license not deductible as ordinary and necessary business expense under section 162 (a), but treated as a capital item); World Publishing Co. v. Commissioner, 35 T.C. 7 (1960), rev'd on other grounds, 299 F. 2d 614 (8th Cir. 1962) (payments to television consultants for services in connection with taxpayer's application for license not an ordinary and necessary business expense but a capital item).

2. "§ 167. Depreciation.
    "(a) General rule—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
    "(1) of property used in the trade or business * * *."

*ited, is not subject to the allowance for depreciation.* \* \* \* " (Italics added.) [3]

While it is not disputed that the expenditures for the training program in anticipation of the grant of a broadcasting license created a valuable asset, the parties are in disagreement as to whether this asset has a life of limited duration as the taxpayer contends, or of unlimited duration as the Government maintains. The taxpayer insists that this capital asset must be regarded as having a useful life limited to the period of the first broadcasting license, which is three years beginning in 1956, when the license was issued and broadcasting began, and that amortization is therefore allowable and due for 1956 and 1957, the tax years in question. Presumably, according to the taxpayer's theory, it is entitled to amortize a pro rata portion of one-third of the sum in each of the years 1956 and 1957, and the remaining one-third in 1958.[4]

The position of the United States is that to qualify this intangible asset for amortization the taxpayer was required by the above-quoted Regulation to prove from "experience or other factors" that the useful life of the asset was for "a limited period, the length of which can be estimated with reasonable accuracy." The Government points to the fact that the only testimony in the record on this issue showed that only "a very, very tiny, tiny percentage" of applications for renewals of both radio and television broadcasting licenses has been denied by the Commission in a period of 25 years. The percentage has been estimated at less than one-tenth of one percent.

The taxpayer, in cross-examining the government witness, posed the possibility that under the statute the taxpayer's license might fail to be renewed, but we think that this suggestion is not entitled to sufficient weight to overcome the contrary experience, practically without exception, in the regulation of the industry. The taxpayer should not be permitted to rely on a remote speculative possibility that the Commission might refuse renewal on the ground of the licensee's misconduct. Indeed, we do not understand that possible future misconduct is relied upon by the taxpayer in support of its contention. But in the absence of misconduct, what reason could arise to cause the Commission to deviate from its consistent practice and refuse renewal? There was no intimation whatever at the trial of a waning public interest in the continued existence of this station. The taxpayer has furnished its own appraisal of the insubstantiality of any such conjecture. It has in fact proceeded in 1956 and 1957 and in the succeeding years with confidence on the only reasonable assumption—that its license, while technically granted for only three years at a time, is in economic operation one of indefinite duration.[5]

3. Although section 167 of the Internal Revenue Code does not specifically refer to intangible assets, the Treasury Regulation, first adopted under the Revenue Act of 1918, has remained substantially unchanged through successive re-enactments of the Code and has the force and effect of law. Commissioner of Internal Revenue v. Indiana Broadcasting Corp., 350 F.2d 580, 581 (7th Cir. 1965), cert. denied 86 S.Ct. 645 (Feb. 1, 1966). See also Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52 (1938).

4. This appears to be the theory set forth in taxpayer's petition for certiorari. When the case was before us, the taxpayer computed the life of the asset as being 58 months, i.e., 3 years plus 22 months, the extra 22 months being the duration of the construction permit issued by the FCC before the grant of the regular license. As we conclude, for reasons hereafter appearing in the text, that the asset has a life of indefinite duration, the apparent disparity is immaterial.

5. Certainly, neither Richmond Television Corporation nor any other FCC licensee would seriously entertain an offer for the purchase of its business calculated on the assumption that business life was limited to the remainder of the current three-year licensing period. If a would-be purchaser were to submit an offer in the hope, whether naive or wily, of obtaining such a bargain, he would soon be

In KWTX Broadcasting Co. v. Commissioner, 31 T.C. 952 (1959), aff'd per curiam, 272 F.2d 406 (5th Cir. 1959), the Commissioner introduced considerable evidence on renewal of television licenses. The Tax Court found as a fact that:

"In the past a large number of these applications for renewal of television broadcasting licenses has been granted and none ever denied,"

and the Tax Court concluded that:

"While it is doubtless true that it will be within the power of the F.C.C. to refuse to grant a renewal of petitioner's television license * * nevertheless we think * * * that it is altogether unlikely that the F.C.C. will deny petitioner's application for a renewal of its license."

Courts have adopted similar reasoning where local broadcasting companies have attempted to amortize the cost of renewable network affiliation contracts. In Commissioner of Internal Revenue v. Indiana Broadcasting Corp., 350 F.2d 580 (7th Cir. 1965), cert. denied, 86 S.Ct. 645 (Feb. 1, 1966), the court reversed the Tax Court, 31 T.C. 793, and denied amortization of the cost of an affiliation contract renewable every two years, even though the taxpayer introduced evidence showing that similar contracts had in the past been terminated. In deciding that the asset was of indefinite duration, the court said that "the record as a whole persuasively indicates, that taxpayer's contracts may be expected to remain in force for a wholly unpredictable period of time." 350 F.2d at 586. See also Westinghouse Broadcasting Co. v. Commissioner, 36 T.C. 912, aff'd, 309 F.2d 279 (3d Cir. 1962), cert. denied, 372 U.S. 935, 83 S.Ct. 881, 9 L.Ed.2d 766 (1963) (cost of television network contract, renewable every two years, not amortizable since asset had an indeterminate useful life). To the same effect, see Gant v. Commissioner, 263 F.2d 558 (6th Cir. 1959) (guaranteed payments to distributor under distributorship contract not amortizable where contract to remain in effect for an unascertainable period of time); and Nachman v. Commissioner, 191 F.2d 934 (5th Cir. 1951) (cost of liquor license renewal privilege not amortizable where no evidence to show a departure from the city's practice of renewing existing licenses, even though licensee had to apply annually for a renewal). Contra, WDEF Broadcasting Co. v. United States, 215 F.Supp. 818 (E.D.Tenn.1963).

In our case, the only evidence in the record is that the asset in question will continue to benefit the taxpayer for an indeterminate period, and its life cannot "be estimated with reasonable accuracy." Since there is no ambiguity in this testimony and no countervailing testimony, a contrary conclusion defies rational thought.

■ Richmond points to the jury's finding that the license has a useful life of limited duration. If there were any basis for such a finding—if there were any submissible issue of fact as to duration—we should of course consider ourselves bound by the jury's answer to the special interrogatory, notwithstanding our disagreement. But there was no shred of evidence of "experience or other factors" to support such a finding.

The bare requirement of periodic renewal cannot be invested with the dominant significance claimed for it. It would completely nullify the pertinent Treasury Regulation to treat the triennial renewal requirement as sufficient to raise an issue of duration in the total absence of any evidence that three years is in fact the life of the asset, determinable "with reasonable accuracy." The passage of the three-year span would become relevant only if there were evidence based on "experience or other factors" showing that the enjoyment of the asset may with reason be expected to end in three years. The limiting factor here is not the necessity for renewal every

---

scornfully reminded by the licensee that in the entire experience of the industry the term of the license is to all intents and purposes perpetual.

third year; the limiting factor, to be operative, must be linked with some reasonable showing that the license holder stands in a more than theoretical danger of nonrenewal.

While the conscientious District Judge carefully explained to the jury the question to be decided, he was in error in submitting the question to them for there was no factual conflict to be resolved. There was a complete absence of evidence to raise a jury question. The point was timely made by the Government in its motion for a directed verdict, and preserved in a motion *n. o. v.*

■■■ We are, of course, fully advertent to the strict limitation on the judge's function when a motion for directed verdict or judgment *n. o. v.* is addressed to him. In deciding whether a genuine issue of fact exists, the party against whom the motion is made is entitled to the benefit of every inference that may reasonably be drawn in his favor. The court should not supplant the jury if there is any room whatever for disagreement. The record in this case is unlike those in which conduct may be thought by the judge to be prudent or negligent, as the case may be, but jurors could reasonably come to a contrary conclusion. In such cases it is an abuse of power to withdraw the case from the jury. Compare the majority and dissenting opinions in Brady v. Southern Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943).

■■■ When, however, the facts are plainly conclusive, the court's function is to refuse submission to the jury and to decide the case as a matter of law. Since the record permitted only one finding, namely, that duration was indefinite, putting the question to the jury for a possible finding of fixed duration invited an answer based not on any fact in the record or any reasonable inference therefrom, but on speculation and caprice. The submission of a nondebatable issue is as much an interference with the traditional allocation of functions between judge and jury, and an injustice to the party entitled to a directed ver-

dict, as directing a verdict when a proper jury question is present.

Denying amortization for the reason that the capital asset is one of indefinite duration does not mean that the expenditure is lost to the taxpayer beyond retrieval. It merely means that the item is added to the capital account and will enter into the computation of gain or loss when the asset is disposed of or abandoned.

The judgment of the District Court is

Reversed and remanded for the entry of judgment in favor of the United States.