**TIMES–WORLD CORPORATION,**
Plaintiff,

v.

**The UNITED STATES of America,**
Defendant.

**Civ. A. No. 1341.**

United States District Court
W. D. Virginia,
Roanoke Division.

Jan. 31, 1966.

Joseph Wysor Smith, Hazlegrove, Carr, Dickinson, Smith & Rea, Roanoke, Va., for plaintiff.

Myron C. Baum, Jack D. Warren, Attorneys, Department of Justice, Washington, D. C., Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

■ This case has been held without decision pending decision by the Court of Appeals of the Fourth Circuit on the remand to it by the United States Supreme Court, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143, of the Richmond television case, 345 F.2d 901. This decision has now come down. Richmond Television Corp. v. United States, 4th Cir., 354 F.2d 410, December 20, 1965. Judge Sobeloff, speaking for the Court, set forth the test which I must apply to the facts in the present case.

> The bare requirement of periodic renewal cannot be invested with the dominant significance claimed for it. It would completely nullify the pertinent Treasury Regulation to treat the triennial renewal requirement as sufficient to raise an issue of duration in the total absence of any evidence that three years is in fact the life of the asset, determinable "with reasonable accuracy." *The passage of the three-year span would become relevant only if there were evidence based on "experience or other factors" showing that the enjoyment of the asset may with reason be expected to end in three years. The limiting factor here is not the necessity for renewal every third year; the limiting factor, to be operative, must be linked with some reasonable showing that the license holder stands in a more than*

*theoretical danger of nonrenewal.* [Emphasis added.]

Id. at 413.

While that case involved the issue of amortization of training program expenditures over a period limited to the duration of the first broadcasting license, I feel that the reasoning and holding is broad enough to cover the instant case where the taxpayer seeks to amortize his general expenses in procuring his operating license over a 48-month period. Therefore, I conclude that I must find for the Government in this matter.

The pertinent facts and exhibits have been stipulated to by the parties and are adopted as the Court's Findings of Fact and I feel that treatment of them is necessary only as to their application to the test set forth by the Fourth Circuit.

■ The issue in this case is whether the costs, e. g., legal fees, incurred by the taxpayer in obtaining the necessary permits and license for operation of its television station were a depreciable expenditure. There is no question but that the expenditures were for a capital asset. Section 167 of the Internal Revenue Code of 1954 (26 U.S.C. § 167) pertains to depreciation and permits as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business. While it does not speak expressly of intangible assets, such as we have here, the present Treasury Regulation § 1.167(a)–3 does cover intangibles.[1] In addition, the regulation has the force and effect of law. Richmond Television Corp. v. United States, supra, at n. 3.

■ The determining factor as to whether an intangible asset is depreciable is whether from experience and other business factors the length of its life

1. § 1.167(a)–3 Intangibles. If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, *the length of which can be estimated with reasonable accuracy,* such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life.
*     *     *     *     *
26 C.F.R. § 1.167(a)–3 (1961) [Emphasis added]

can be estimated with *reasonable accuracy*. The Government's position is that a television license does not have such a *determinable* useful life. The taxpayer, on the other hand, points to the Communications Act of June 19, 1934, as establishing "with reasonable accuracy" a lifetime not in excess of three years.[2]

As in the instant case, the taxpayer in the Richmond Television case raised the possibility that the license might not be renewed at the end of its present term. However, I am in agreement with Judge Sobeloff in giving little weight to such a possibility in light of the experience to the contrary in the industry.

> The taxpayer should not be permitted to rely on a remote speculative possibility that the Commission might refuse renewal on the ground of the licensee's misconduct. Indeed, we do not understand that possible future misconduct is relied upon by the taxpayer in support of its contention. But in the absence of misconduct, what reason could arise to cause the Commission to deviate from its consistent practice and refuse renewal? There was no intimidation whatever at the trial of a waning public interest in the continued existence of this station. The taxpayer has furnished its own appraisal of the insubstantiality of any such conjecture. It has in fact pro-

ceeded in 1956 and 1957 and in the succeeding years with confidence on the only reasonable assumption—that its license, while technically granted for only three years at a time, is in economic operation one of indefinite duration.

Richmond Television Corp. v. United States, supra, at 412 (footnote omitted). Indeed, as Judge Sobeloff adds in a footnote to the above quotation, if the business life of a television station could only be assumed to be three years then neither the Richmond Television Corporation nor any other FCC licensee would seriously consider entering into the business because of the substantial capitalization required for such a business. Id. at 412, n. 5.

Returning to the case at bar, the taxpayer has given no indication that it might misconduct itself in the future, thereby jeopardizing its license. To the contrary, the taxpayer from its prior radio and newspaper operations, gives every indication of being a stable corporation whose affairs are managed and conducted in a sober and businesslike manner. Nor did the taxpayer present any evidence of a "waning public interest in the continued existence of this station."

While in theory the license is for a statutory maximum of only three years, 48 Stat. 1083, 47 U.S.C.A. § 307(d)

---

2. The pertinent provisions of the Act are as follows:

§ 301. License for radio communication or transmission of energy. It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of interstate and foreign radio transmission; and to provide for the use of such channels, but not the ownership thereof, by *persons for limited periods* of time, under licenses granted by Federal authority, *and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license.* * * *
[48 Stat. 1081 (1934), 47 U.S.C. § 301 (1958)] [Emphasis added.]
§ 307 Licenses; allocation of facilities; terms; renewals

(d) No license granted for the operation of a broadcasting station shall be for a longer term than three years * * *, and any license granted may be revoked as hereinafter provided. Upon the expiration of any license, upon application therefor, a renewal of such license may be granted from time to time for a term of not to exceed three years in the case of broadcasting licenses, * * *, if the Commission finds that public interest, convenience, and necessity would be served thereby. * * * Pending any hearing and final decision on such an application and the disposition of any petition for rehearing pursuant to section 405 of this title, the Commission shall continue such license in effect. * * *
[66 Stat. 714 (1952), 47 U.S.C. § 307(d) (1958)]

(1962 ed.), the only evidence offered by the taxpayer that its license may not continue in perpetuity, through appropriate renewals, is the fact that during the ten year period ending June 30, 1963 the Federal Communications Commission (FCC) designated 12, or 0.7% of television renewal applications for hearing out of a total of 1,743 television renewal applications received.[3]

The taxpayer points in particular to the 1962 and 1963 reports of the FCC to Congress as indicating a tightening of Commission policy on renewal. The fiscal 1962 report shows that there were 21 license renewal proceedings, of which only one can be positively identified as involving a television license. Even so, there appears to have been no final revocation in that year among the 21 involved. During the fiscal year 1963, "five station licenses were revoked and eight others were in revocation proceedings; eight stations were denied license renewals and seventeen others were in renewal proceedings; * * *." Federal Communications Commission 29th Ann.Rep. 47 (1963). Of these the only apparent involvement of television stations was one station in revocation proceedings and two in renewal proceedings.

The number of broadcast license renewals deferred for hearing arose from 397 in FY 1962 to 476 in FY 1963, or an increase of approximately 20%. While this increase is attributed to a greater public awareness of the licensee's duty towards the public, it is significant that of the revocation and renewal proceedings for both years none seemed to be based on a "waning public interest." Instead they arose from improper management and supervision, as well as improper transfers. George W. Knipe, 65 P–H Tax Ct.Mem. 731, 750–51 (1965). To say that the present taxpayer can prevail because it might be denied a renewal due to its own future misconduct would be to reward the taxpayer in anticipation of its future misconduct. Such a position is untenable.

■ In sum, the petitioner has failed to link the three year limiting factor with some reasonable showing that it stands in more than a "theoretical danger of nonrenewal" and its reliance on WDEF Broadcasting Company v. United States, 215 F.Supp. 818 (E.D.Tenn.1963) is not persuasive.[4]

Accordingly, the taxpayer's petition will be denied.

3. A hearing must be afforded the station before renewal of its license can be denied. 66 Stat. 715 (1952), 47 U.S.C. § 309 (1958). Furthermore, while such hearings and any appeal therefrom are in progress, the license continues in effect and as a practical result a license could last for a much longer period than three years without final action being taken on its renewal.

4. 215 F.Supp. 818 (E.D.Tenn.1963). The issue in this case was whether the taxpayer could amortize $21,787.17 of legal and other expenses incurred in obtaining an FCC license over the period of the construction permit and initial license. The court, in holding for the taxpayer, found that the power to grant or refuse licenses was "the principal weapon in the arsenal of the Federal Communications Commission." It con-

cluded that it "ill behooves" the Government to on one hand limit licenses to three years at a time while on the other hand treating them as of indefinite duration for tax purposes. While the argument has some appeal, I find that it does not withstand analysis. The ruling of one governmental agency made under one statute does not control the ruling of another governmental agency made under a different statute and for a different purpose. Herndon v. United States, 203 F.Supp. 536 (E.D.S.C.1962). Indeed, while not expressly saying so, a reading of Richmond Television Corp., supra, implies the Fourth Circuit's disagreement with WDEF which it notes only as a contra cite at the end of a string of citations. Richmond Television Corp. v. United States, supra, 354 F.2d at 413.