JULIAN O. AND PENELOPE J. VON KALINOWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Von Kalinowski
Docket No. 5647-91
United States Tax Court
T.C. Memo 1993-26; 1993 Tax Ct. Memo LEXIS 33; 65 T.C.M. (CCH) 1788; January 25, 1993, Filed *33 Decision will be entered for respondent. For petitioners: J. Nicholson Thomas and Carl T. Crow. For respondent: Robin F. Kaufer. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 70,138 in petitioners' Federal income taxes for 1985. The deficiency is based upon respondent's disallowance of depreciation deductions, the investment tax credit, and the business energy credit. The sole issue for decision is whether certain photovoltaic (solar energy) system equipment was placed in service during 1985 within the meaning of sections 38, 46, and 167. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated herein by this reference. Petitioners resided in Los Angeles, California, at the time they filed their petition. In December 1985, Julian O. Von Kalinowski (petitioner) met with Howard Kraye (Kraye), president of Photosil, to discuss a solar equipment investment program. The meeting with *34 Kraye took place at the offices of petitioner's accountant, Mark Sheron. The program that was offered to petitioner was for the purchase of solar energy equipment (equipment) that would provide energy, in conjunction with a local utility company, to a third party. The investment literature described investment plans for purchasing the equipment and selling the electricity savings it produced to third parties or for purchasing and then leasing the equipment. The equipment was delivered to a McDonald's restaurant at 3920 Niles Street, Bakersfield, California, prior to January 1, 1986. The equipment did not produce electricity that was usable by McDonald's during 1985. On December 30, 1985, an Energy Purchase Agreement (McDonald's agreement) was entered into between JKS & Associates, Inc. (JKS), an entity associated with Kraye, and McDonald's Restaurant's of California, Inc., a California Corporation (owner of the McDonald's located at 3920 Niles Street, Bakersfield, California). Kraye was the secretary and a director of JKS at that time. The agreement provided for monthly payments by McDonald's of 80 percent of its energy savings, if any, due to use of the solar equipment's electricity *35 rather than the local utility's electricity. The stated purpose of the McDonald's agreement was that, "During the term of this Agreement, Energy Purchaser [McDonald's] shall purchase, and Energy Seller [JKS] shall sell, all energy produced by the Solar Energy System." In December 1985, petitioner entered into a Design and Installation Contract (purchase contract) with Kraye, on behalf of Photosil, for the purpose of purchasing solar equipment located at the McDonald's restaurant. The purchase contract was dated December 1, 1985, but petitioner testified that it was signed December 31, 1985. The aggregate purchase price of this equipment was $ 229,000, which consisted of a payment of $ 46,000 on December 31, 1985, a note for $ 140,000 signed December 31, 1985, and a payment of $ 43,000 in April 1986. The note was secured by a security agreement encumbering the equipment. Pursuant to the purchase contract, Photosil agreed to install and subsequently perform all routine maintenance required for the equipment. On December 31, 1985, and during finalization of the purchase contract, petitioner received a letter also dated December 31, 1985, from Kraye warranting that the energy production *36 and income from the equipment would match projections. On their 1985 income tax return, petitioners deducted $ 30,056 in depreciation and claimed an investment tax credit of $ 23,902 and a business energy tax credit of $ 34,350 in connection with the equipment. On Schedule C of that return, petitioners described the principal business in which the equipment was used as "electric power". ULTIMATE FINDINGS OF FACT The business for which petitioner acquired his equipment was the production of electric energy savings for sale to third parties. Petitioner's equipment was not placed in a condition or state of readiness and availability for the specifically assigned function of producing electric energy savings in 1985. OPINION The determination of when equipment has been placed in service for purposes of depreciation deductions, investment tax credits, and business energy tax credits is governed by sections 38(a), 46(a)(1), (a)(2), and (c)(1) and sections 1.46-3(a)(1), 1.167(a)-10(b), and 1.167(a)-11(e)(1)(i), Income Tax Regs. These Code sections and regulations define the time when equipment is placed in service as the time when it is "placed in a condition or state of readiness *37 and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity." Secs. 1.46-3(d)(1)(ii) and 1.167(a)-11(e)(1)(i), Income Tax Regs.
For an asset to be placed in service, it is not necessary that the property actually be used during the taxable year in the taxpayer's profit-motivated venture; it is sufficient that the property be available for use. Waddell v. Commissioner, 86 T.C. 848, 897-898 (1986), affd. 841 F.2d 264 (9th Cir. 1988). The Court has stated in a number of cases that equipment purchased for a new business enterprise that has yet to begin operations is not in a condition or state of readiness and availability for its specifically assigned function until installed and available for operation; thus, depreciation, investment tax credits, and business energy tax credits are not allowed on such assets. Richmond Television Corp. v. United States, 354 F.2d 410 (4th Cir. 1965); Consumers Power Co. v. Commissioner, 89 T.C. 710 (1987); Piggly Wiggly Southern, Inc. v. Commissioner, 84 T.C. 739 (1985), *38 affd. 803 F.2d 1572 (11th Cir. 1986); LTV Corp. v. Commissioner, 63 T.C. 39 (1974). However, uninstalled equipment that is purchased for leasing to others in a profit-motivated leasing venture may be regarded as placed in service when it is first held out for lease. Cooper v. Commissioner, 88 T.C. 84, 113-114 (1987). In Piggly Wiggly Southern, Inc. v. Commissioner, supra, the Court reviewed several "idle asset" cases in which the "placed in service requirement" was met for assets not yet in actual use but available in a state of readiness for use in an operating trade or business. The Court held that equipment purchased for remodeling certain of the taxpayers' stores had been placed in service in the year purchased, while equipment purchased for unopened stores had not been placed in service until the opening of those stores. The controlling facts were that (1) the taxpayers were already engaged in the business for which the idle equipment had been purchased and (2) the taxpayers had done all that was in their power to place the equipment in service. In *39 the instant case, the burden is on petitioners to prove entitlement to the claimed depreciation and credits. Rule 142(a); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133. Petitioners' argument is that the McDonald's agreement was a lease and, regardless of whether the McDonald's agreement is classified as a lease or service agreement, the purpose of petitioner's purchase contract was for petitioner to make solar energy equipment available for use by third parties. Therefore, petitioners argue, the equipment purchased by petitioner on December 31, 1985, should be deemed placed in service in 1985, when the equipment was made available to third parties such as McDonald's. Petitioners rely on Cooper v. Commissioner, 88 T.C. 84 (1987), Waddell v. Commissioner, 86 T.C. 848, 897-898 (1986), affd. 841 F.2d 264 (9th Cir. 1988), and Wood v. Commissioner, T.C. Memo. 1991-205, for the proposition that a taxpayer does not actually have to use the equipment during the taxable year but *40 merely that it be available in order to qualify for depreciation and investment and business energy tax credits. In Cooper v. Commissioner, supra, the taxpayers purchased solar water-heating systems that were simultaneously leased to a third party, Coordinated Marketing Programs, Inc. (Coordinated), and subleased by Coordinated to homeowners. The subleased systems were installed in the homes in a year subsequent to the year of purchase by the taxpayers. The Court held that the systems were available for use in the taxpayers' profit-motivated leasing venture in the initial year of purchase because Coordinated was then leasing the uninstalled systems. Thus, the systems were placed in service in the first year rather than in the year that they were installed in the homes. Id. at 113-114. In Waddell v. Commissioner, supra, the taxpayer purchased an interest in four franchises that each purchased an electrocardiogram terminal (ECG). The franchises contracted with distributors to medical centers for use of the ECGs. Simultaneously with the execution of the franchise agreement, the *41 taxpayer executed distribution agreements with the independent medical equipment distributors. At the time the franchise agreement was signed, the machines were available for the taxpayer to direct delivery of the machines to the distributors or to the ultimate users. Thus, the Court concluded that the taxpayer had placed the terminals in service in the year the franchise agreement was signed. Conversely, in Wood v. Commissioner, supra, the taxpayers purchased solar water-heating systems and paid leasing companies to find and contract with end users for the equipment. Some of the equipment had not been manufactured until the year after that equipment was purchased. The Court held that such systems had not been placed in service during the year of purchase. Petitioners assert that Wood applied a two-part analysis for determining when solar water-heating equipment was placed in service. Petitioners argue that the Wood analysis is applicable here, i.e., the placed-in-service date is the latter of (1) the date on which the taxpayers concluded their purchase agreements for the equipment or (2) the date on which the equipment actually was *42 shipped by the manufacturer. Petitioners argue that they satisfied the placed-in-service analysis because their equipment was manufactured and also delivered to the premises of McDonald's in 1985. Respondent argues that petitioner was charging McDonald's for services rendered and not for leasing the equipment to McDonald's. Respondent asserts that the function of petitioner's solar energy equipment was that it be installed at a consumer's place of business and that its energy be sold to that consumer. Respondent's position is, therefore, that the solar energy equipment was not placed in service until the equipment was installed and energy was sold to the consumer. Overall, respondent denies that the McDonald's agreement was a lease. Another leasing case, not mentioned by either party, LTV Corp. v. Commissioner, 63 T.C. 39 (1974), involved a contract to lease computer equipment. Pursuant to the contract, computer equipment was to be installed by the seller on or before December 31, 1961. The computer was on the taxpayer's premises prior to the installation date. However, installation of the computer was not completed until after December 31, *43 1961. The Court, therefore, concluded that the taxpayer was not entitled to an investment tax credit in 1961 because the taxpayer had purchased an installed and operating computer. The Court further stated that "IBM [the seller] felt its installation obligation was not completed until there was a mutual agreement between IBM and the customer [the taxpayer] that the machine was operational and ready to perform the functions for which it was intended." Id. at 48. Here, petitioner's equipment was, likewise, uninstalled in the year of purchase. See also Madison Newspapers, Inc. v. Commissioner, 47 T.C. 630, 637 (1967). We have found that the McDonald's agreement titled "Energy Purchase Agreement" was not a lease but, rather, an arrangement for the purchase of energy savings from JKS. Although petitioner testified that he intended to enter into a leasing arrangement, the facts and circumstances surrounding the investment indicate otherwise. The McDonald's agreement, the purchase agreement, the alternative programs discussed in the Photosil investment brochure, the 1985 joint return, and the circumstances surrounding petitioner's *44 solar equipment purchase indicate that the investment was for the sale of electric energy savings to a third party. We are not persuaded that the McDonald's agreement is comparable to a lease, and petitioner's actions do not indicate that he intended to lease his equipment to anyone. Although they admit that the exercise is "inconclusive at best", petitioners assert that section 7701(e) "controls the characterization of" the McDonald's agreement as a lease. Section 7701(e) provides that a service contract will be treated as a lease if, after weighing certain factors, the contract is characteristic of a lease. The factors enumerated in section 7701(e)(1) are: (A) the service recipient is in physical possession of the property, (B) the service recipient controls the property, (C) the service recipient has a significant economic or possessory interest in the property, (D) the service provider does not bear any risk of substantially diminished receipts or substantially increased expenditures if there is nonperformance under the contract, (E) the service provider does not use the property concurrently to provide significant services to entities unrelated to the service recipient, *45 and (F) the total contract price does not substantially exceed the rental value of the property for the contract period.
Petitioners argue that they met a majority of these requirements. Respondent, on the other hand, argues that section 7701(e) was misinterpreted by petitioners because section 7701(e)(3)(A) provides that an agreement with respect to "alternate energy facilities" will be treated as a service contract and not be recharacterized as a lease under section 7701(e)(1). Section 7701(e)(3)(A) provides that alternate energy facility contracts that purport to be service contracts shall be treated as service contracts. An alternate energy facility is a "facility for producing electrical or thermal energy if the primary energy source for the facility is not oil, natural gas, coal, or nuclear power." Sec. 7701(e)(3)(D). Moreover, section 7701(e) deals with leases to tax-exempt entities for purposes of the investment tax credit. See Smith v. Commissioner, T.C. Memo. 1989-318. The McDonald's agreement provides for solar (i.e., not natural fuel) electric services, and McDonald's is not a tax-exempt entity. Thus, we agree with respondent *46 that the McDonald's solar energy contract should not be recharacterized as a lease under section 7701(e). In any event, even if the McDonald's agreement were classified as a lease, petitioner would not be entitled to depreciation and tax and business energy credits for 1985 because he has failed to establish that the equipment was ready during that year to perform its assigned function, namely, the production of electric energy savings. Respondent relies on Consumers Power Co. v. Commissioner, 89 T.C. 710 (1987), and Oglethorpe Power Corp. v. Commissioner, T.C. Memo. 1990-505, for the proposition that petitioner's equipment was not placed in service until the equipment was capable of selling electric energy savings to the consumer. Consumers Power Co. v. Commissioner, supra, involved a hydroelectric plant that did not begin producing electric power for transmission to the public on the basis originally envisioned until the year after the plant had been constructed and was not deemed to be placed in service until demonstrating that it was available for service on a regular basis. In *47 Oglethorpe Power Corp. v. Commissioner, supra, the Court rejected the taxpayer's argument that an energy system was placed in service when it was first activated by the taxpayer because the system in that case needed to be tested and defects had to be removed before the system could start producing power for sale to customers. Respondent's reliance on the above-mentioned power company authorities is challenged by petitioners because petitioner was not a public utility that generated electricity on its own premises for transmission and distribution to consumers at other locations. However, the purpose of petitioner's equipment was the production of electric power in conjunction with that from a local utility; what petitioner sold was the savings from what would have been paid to the local utility alone. Petitioner's equipment did not produce such electric power or electric power savings in 1985. We are unable to ascertain from the evidence presented whether the equipment was even capable of such electric power generation in 1985. Petitioner entered into the solar electric venture for the first time in 1985. Petitioners have stipulated that petitioner's *48 equipment did not produce electricity usable by McDonald's or any third party in 1985, and petitioners have not proven that the equipment was capable of producing electric power savings for anyone in 1985. Thus, they have not proven that petitioner's equipment was placed in a condition or state of readiness and availability for the specifically assigned function of producing electric energy savings. Decision will be entered for respondent.