OWEN A. STEINBERG AND MARCIA L. SILLS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steinberg v. Commissioner
Docket No. 13003-92
United States Tax Court
T.C. Memo 1995-116; 1995 Tax Ct. Memo LEXIS 121; 69 T.C.M. (CCH) 2131; March 21, 1995, Filed *121 Decision will be entered under Rule 155. Owen A. Steinberg, pro se. For petitioner Marcia L. Sills: Edward P. Phillips. For respondent: Avarian P. McKendrick, James Dawson, and Ellen T. Friberg. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined income tax deficiencies and additions to tax for petitioners as follows: Additions to Tax Year
Deficiency Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1987
$ 27,091.50
$ 1,354.57 [1]
$ 6,773
1988
32,661.66
[2] 1,633.08
8,165
After concessions, we must decide the following issues: 1. The amount of petitioner Marcia Sills' gross income from her medical practice in 1988. We hold that it was $ 49,079.08. 2. The amounts petitioners may deduct on Schedules A and C of their tax returns for 1987 and 1988. We hold petitioners may deduct amounts as described below. 3. Whether petitioners are liable for additions to tax for negligence for 1987 and 1988 under section 6653(a)(1). We hold that petitioners are liable for negligence for 1987 *122 and 1988 if the Rule 155 computations show that there is an understatement of tax. 4. Whether petitioners are liable for the addition to tax for substantial understatement of tax for 1987 and 1988 under section 6661. We hold that they are if there is a substantial understatement of tax to be determined in the Rule 155 computations. Section references are to the Internal Revenue Code in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT Some of the facts have been stipulated and are so found. A. Petitioners
Petitioners resided in Ft. Lauderdale, Florida, when they filed the petition. 1. Marcia L. Sills
Marcia L. Sills (Dr. Sills) is a medical doctor with a specialty in gastroenterology. She worked for a group of physicians at Price-Schachere Medical Center in 1987 and in the first half of 1988. She paid $ 1,035 for medical textbooks in 1987. 2. Owen A. Steinberg
Owen A. Steinberg (Steinberg) is a financial analyst, with a degree in accounting and marketing. He did some graduate work in statistics and marketing. Steinberg was not a certified public accountant, *123 a certified financial planner, or a member of any accounting associations. Steinberg worked for American Dade Division of Baxter Healthcare Corp. and Careplus-Inc. as a management and business analyst in 1987 and part of 1988. He worked at American Hospital Supply Corp. (American Hospital Supply) in Miami in 1987. Steinberg received retirement income from American Hospital Supply and Harris Trust & Savings Bank in 1987. Steinberg received income from American Security Insurance Co. He began receiving unemployment compensation in August or September 1988. He received a total of $ 2,000 in unemployment compensation in 1988. 3. Petitioners' Residences and Family Life
Petitioners were married on November 1, 1985, and had a child in 1987. They lived in an apartment on Galt Ocean Drive in Ft. Lauderdale from January to June 1987. They bought a house on Middle River Drive on June 22, 1987, and began to live there in July 1987. They prepaid $ 332.91 for interest from June 22 to June 30 on the mortgage of their home when they bought it. Their home telephone numbers during the years in issue were (305) 563-3646 at Galt Ocean Drive, and (305) 564-4878, and later (305) 564-4565, *124 at Middle River Drive. Microtel, Inc. (Microtel), provided long-distance service for petitioners' home telephone. Dr. Sills had a cellular telephone in her car served by Cellular One. Florida Power and Light (FP & L) provided electricity for petitioners' home. Petitioners had homeowners' and flood insurance for their home. Petitioners subscribed to publications such as newspapers and computer magazines, and to a cable television service. Rita Sills, Dr. Sills' mother, and Sonia Krakower, Dr. Sills' grandmother, made gifts and loans by checks totaling several thousand dollars to petitioners in 1987 and 1988. Petitioners divorced after 1988 and before the trial in this case. 4. Petitioners' Bank Accounts
In 1988, petitioners had seven bank accounts at Southeast Bank, Barnett Bank, and Sun Bank. Petitioners did not have separate personal and business bank accounts. They deposited their salaries and business income in their bank accounts. Petitioners deposited $ 169,970 in their bank accounts in 1988. B. Telephone Communications Business
Petitioners began a pay telephone business in February 1987 in Dr. Sills' name. They paid Invest-a-phone $ 3,000 for equipment *125 and $ 265 to install it at 1231 S. Federal Highway. In March 1988, petitioners filed a complaint with the police that the telephone had been vandalized and that they were the victims of Invest-a-phone's fraud. C. Steinberg's Financial Consulting Business
On July 1, 1987, Steinberg began to operate a financial consulting business at 1317 Middle River Drive, Ft. Lauderdale, Florida. He was a financial consultant and money manager for his clients. He also helped Dr. Sills manage her financial portfolio in 1987. Steinberg managed Dr. Sills' medical office in 1988, but he did not receive any wages from her. Steinberg kept Dr. Sills' books and records in 1988, including her income and accounts receivable ledger. Steinberg owned two vehicles in 1987 and 1988. Petitioners' Middle River Drive home had about 2,500 square feet. The area of Steinberg's home office was between 150 to 200 square feet. It had a side entrance for clients. The office had a computer, facsimile machine, typewriter, photocopier, desk, shelving, telephone, and file cabinets. Steinberg's office telephone number was (305) 564-0024. Southern Bell provided his telephone service. Steinberg used his home *126 office exclusively for business. He met with clients and prospective clients in his home office. He did research and kept his business files and a computer there. He also sometimes met clients at other places. He had no other office in 1987 or 1988. Steinberg had seven or eight clients in 1987. D. Dr. Sills' Private Medical Practice
Dr. Sills began a private medical practice in July or August 1988. She leased space for her medical office. She bought signs, had it decorated, and installed alarms and safety equipment. She bought and rented medical and office furniture and equipment. Petitioners had the following basis in several items that Dr. Sills bought for her private medical practice: Item
Basis
Purchase Date Exam tables (2)
$ 1,050
July 1988
Lateral file and chair
424
July 1988
EK-1 EKG
1,797
July 1988
DFS2 scope and light
3,966
July 1988
Carpet
750
July 1988
Shelving
29
July 1988
Shelving
44
July 1988
Lights (chandeliers)
181
July 1988
Office cabinet
169
July 1988
Vertical blinds
205
July & Aug. 1988
Stools
40
Sept. 1988
Exam table
475
Sept. 1988
X-ray light
45
Sept. 1988
Floor lamp
20
Sept. 1988
Scale
120
Sept. 1988
Stools (3)
120
Sept. 1988
Blood pressure machine
200
Sept. 1988
*127 She bought a wall unit from Office Depot, but returned it and got a refund. She obtained professional liability insurance from Frontier Insurance Co. of New York during the years in issue. Most of Dr. Sills' patients had Medicare or Blue Cross/Blue Shield insurance coverage. Dr. Sills filed Medicare claims for medical services that she provided to her patients. In 1988, insurance companies usually paid Dr. Sills within 1 month from the time she submitted the claim for patient services if the claim was filed properly. Dr. Sills failed to change her Medicare provider number when she started her own practice, which caused most Medicare payments to her to be delayed. Steinberg and Dr. Sills' staff recorded each of Dr. Sills' patient's accounts in a computer spreadsheet file. The spreadsheet file included each patient's name, the date Dr. Sills saw the patient, the charges and payments made, and the balance owed to Dr. Sills. Steinberg and Dr. Sills' staff recorded the account information contemporaneously. In 1988 Dr. Sills received payments of $ 49,079.08. On December 31, 1988, she was owed $ 68,411.38 for services she provided in 1988. The spreadsheet file shows that on *128 December 31, 1988, Dr. Sills had total charges of $ 117,490.46. Petitioners erroneously reported that amount on their 1988 return as Dr. Sills' gross receipts, even though they were cash basis taxpayers and Dr. Sills received only $ 49,079.08 in 1988. Dr. Sills bought gifts for referring physicians from Morrow's Nut House and P.G. Dolls in 1988. Petitioners held a catered party in October 1988 for their son's first birthday. Guests included friends who were referring physicians. E. Schedule A Itemized Deductions
In 1987, petitioners paid $ 42 for a safety deposit box, $ 1,436 for real estate taxes, $ 6,813 for home mortgage interest, and $ 2,250 for points when they bought their home. Dr. Sills had some unreimbursed business expenses. On April 6, 1988, petitioners gave St. Vincent De Paul Stores various items including bedding, clothing, tires, a garage door opener, flooring, small appliances, china, watches, jewelry, ceramics, a suitcase, a tennis racket, and a screen door. The fair market value of these items was $ 540. Petitioners contributed $ 375 to Temple Emanuel and $ 50 to the American Heart Association, Broward County Chapter, in September 1988. Petitioners *129 contributed a total of $ 965 to charitable organizations in 1988. F. Income Tax Returns, Examination, and Notice of Deficiency
Petitioners filed joint income tax returns for 1987 and 1988. Steinberg prepared their returns. They reported gross income for their Schedule C businesses as follows: Year
Steinberg Dr. Sills
1987
$ 7,823.34
$ 1,539.19
1988
4,500.00
117,201.00
Petitioners reported business deductions on Schedule C as follows: Year
Steinberg Dr. Sills
1987
$ 45,672.95
$ 16,272.16
1988
15,427.00
154,748.58
Petitioners erroneously reported that $ 24,490 in transfers from one of petitioners' accounts to another were wage payments to Dr. Sills. [1]
*130 Steinberg printed data from Dr. Sills' spreadsheet file of patients' accounts for 1988 in early October 1991 for respondent's auditors. OPINION We must decide the amount of petitioners' income in 1988 and deductions for 1987 and 1988, and whether petitioners are liable for additions to tax. A. Dr. Sills' Gross Income in 1988
The parties dispute the amount of gross income Dr. Sills received from her medical practice in 1988. On brief, respondent argues that her income was $ 117,201. Petitioners reported that her gross income was $ 117,201. Petitioners contend that her income was $ 49,079. Petitioners were cash basis taxpayers. They erroneously reported that Dr. Sills had income equal to the amount of her billings in 1988, but in fact her income was only $ 49,079.08. Her records show that she billed $ 117,201 but received only $ 49,079.08. [2] Steinberg and Dr. Sills corroborated this with their testimony. Respondent argues that we should disregard their testimony as self-serving. While we are not required to believe the testimony of a witness, we will not arbitrarily disregard credible testimony. Demkowicz v. Commissioner, 551 F.2d 929, 931-932 (3d Cir. 1977), *131 revg. T.C. Memo. 1975-278; Miller v. Commissioner, 203 F.2d 350, 353 (6th Cir. 1953), remanding a Memorandum Opinion of this Court. Petitioners' testimony on this point was credible. *132 Respondent used the bank deposits method to determine that Dr. Sills' gross income in 1988 was $ 91,540. Respondent's determination is presumed to be correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent's bank deposits method failed to properly account for nontaxable sources of deposits such as transfers of funds between petitioners' accounts. Petitioners have proven that respondent's determination of Dr. Sills' 1988 gross income is incorrect. We conclude that Dr. Sills received $ 49,079.08 in income from her medical practice in 1988. Petitioners argue that respondent's determination was arbitrary. We disagree. Petitioners reported an incorrect amount of income and erroneously paid and deducted wages to Dr. Sills because she was a sole proprietor. Also, the checks from Dr. Sills' mother and grandmother did not indicate that they were gifts from a relative. Under the circumstances, respondent's use of the bank deposits method to estimate petitioners' income in 1988 was incorrect, but not arbitrary. Also, as discussed next, we sustain most of respondent's determinations relating to petitioners' deductions. B. Deductions
*133 Taxpayers bear the burden of proving that their deductions are proper. Rule 142(a); Welch v. Helvering, supra. A taxpayer must keep adequate records to substantiate claimed deductions. Sec. 6001. Section 162 permits the deduction of ordinary and necessary business expenses in connection with the performance of services as an employee. To be deductible under section 162(a) an expense must: (1) Have a business purpose, Commissioner v. Heininger, 320 U.S. 467 (1943); sec. 1.162-1(a), Income Tax Regs.; (2) be ordinary and necessary; and (3) be paid within the taxable year, sec. 162(a). 1. Pay Telephone Business Deductions for 1987
Petitioners contend that Dr. Sills had pay telephone equipment expenses of $ 3,285 in 1987. Respondent allowed $ 3,265 ($ 3,000 for the equipment and $ 265 to install it). Respondent disallowed petitioners' deduction of $ 19.74 that they paid to Telephone Warehouse by check dated July 6, 1987. The memo on that check states "office phone equipment". Steinberg testified that checks relating to their pay telephone business were made payable to Investa Phone. We conclude that petitioners *134 may not deduct $ 19.74 paid to Telephone Warehouse because it was not an expense of their pay telephone business, and that petitioners may not deduct more than the amounts allowed by respondent for their pay telephone business. 2. Steinberg's Financial Consulting Business Deductions for 1987
a. Advertising Expenses
Respondent concedes and we hold that petitioners may deduct $ 1,573 for Steinberg's advertising expenses for 1987. b. Car and Truck Expenses
Petitioners argue that they may deduct $ 5,794 for Steinberg's car and truck expenses for 1987. Respondent contends that petitioners may not deduct any amount because they did not meet the substantiation requirements of section 162 or 274(d). Section 274(d) provides: (d) Substantiation Required. -- No deduction or credit shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * (4) with respect to any listed property (as defined in section 280F(d)(4)), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the *135 time and place of the travel * * * or use of the * * * property * * *, (C) the business purpose of the expense or other item * * *. * * * Car and truck expenses are "listed property". Sec. 280(F)(d)(4)(A)(i). For listed property, a taxpayer "shall maintain an account book, diary, statement of expense or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure". Sec. 1.274-5(c)(2), Income Tax Regs.
Petitioners' evidence that Steinberg's 1987 automobile expenses are deductible consists of canceled checks and Steinberg's testimony. He testified that he used two vehicles for business in 1987. Steinberg offered no records showing how he used his vehicles. Petitioners testified that they used their vehicles nearly exclusively for business. For example, Steinberg said that he walked to the store with the baby and did not drive. However, they did not convince us that they only used their vehicles for business or of the amount of the business use of these vehicles. Thus, petitioners did not meet the requirements of section 162 or 274(d). We hold that petitioners may not deduct any amount for Steinberg's *136 1987 auto and truck expenses. c. Expenses for Dues and Publication
Petitioners argue that Steinberg may deduct dues and publication expenses of $ 163 for 1987. Respondent allowed $ 31. Steinberg began his financial consulting business in July 1987. Petitioners claim a deduction for some expenses incurred before July 1987, and for one check written in December 1987 which was not paid because of insufficient funds. Petitioners may not deduct the amount of the check which was not paid. Start-up or pre-opening expenses are not currently deductible under section 162. Richmond Television Corp. v. United States, 345 F.2d 901, 906-907 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965), original holding on this issue reaffd. 354 F.2d 410, 411 (4th Cir. 1965), overruled on other grounds NCNB Corp. v. United States, 684 F.2d 285, 289 (4th Cir. 1982); Hardy v. Commissioner, 93 T.C, 684, 687 (1989), affd. on this issue, remanded on another issue in an unpublished order (10th Cir. Oct. 29, 1990). Thus, petitioners *137 may not deduct as business expenses amounts Steinberg paid before he began his business. Petitioners have not convinced us that their other subscriptions, such as computer magazines, were business expenses. We conclude that petitioners may not deduct more than respondent allowed for Steinberg's dues and publications expenses. d. Legal and Professional Expenses
Petitioners contend that they may deduct $ 250 and respondent contends that they may not deduct any amount for legal and professional expenses for Steinberg's business for 1987. Petitioners argue that they may deduct roughly 50 percent of $ 490 they paid to Werksman & Weintraub by a check dated April 23, 1987, signed by Dr. Sills. The check memo states that the payment is for "services rendered (uncollected debt) (vs Marc Berman)". As discussed above (see paragraph B-2-c), petitioners may not deduct payments made before July 1987 as expenses of Steinberg's business. Also, petitioners have not shown that there was any business purpose for the $ 490 payment. Steinberg testified that Werksman & Weintraub was a law firm that helped petitioners in various matters. However, Steinberg did not specifically tie this payment *138 to his business. We conclude that petitioners may not deduct any amount for Steinberg's legal and professional expenses in 1987. e. Expenses for Office Supplies
Petitioners argue that they may deduct $ 1,717 for expenses for Steinberg's office supplies in 1987. Respondent allowed $ 950. Petitioners paid $ 899.85 to Sharper Image for "promo items", but there is no evidence the payment was for Steinberg's office supplies. Petitioners paid $ 170 to Lotus Line on February 3, 1987. This was before Steinberg started his business. Thus, it is not deductible as an expense of his business. Richmond Television Corp. v. United States, supra; Hardy v. Commissioner, supra.We are not convinced that petitioners may deduct expenses in excess of that allowed by respondent for Steinberg's office supplies in 1987. f. Utilities Expenses and Home Office Deduction
Petitioners argue that they may deduct 10 percent of their home utilities expenses because Steinberg had a home office there in 1987. Respondent contends that petitioners do not qualify for a home office deduction because petitioners did not prove that *139 Steinberg used the office exclusively for business or that Steinberg spent a substantial amount of time there. Sec. 280A. A taxpayer may deduct expenses for an office in the home if a portion of the home is exclusively used on a regular basis: (i) As the principal place of business for any trade or business of the taxpayer, or (ii) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business. Sec. 280A(c)(1). We have found that Steinberg used his office exclusively for business. Respondent disputes our finding because respondent alleges that Steinberg had Dr. Sills' medical records in his office. The record is not clear about whether Steinberg physically stored Dr. Sills' medical records in his home office. Even if he did, Dr. Sills paid Steinberg $ 850 in August 1988 to do her bookkeeping. Thus, it appears that Steinberg had Dr. Sills' records at his office as part of his business. We conclude that Steinberg used his office exclusively for business. The determination of the principal place of business depends on the facts of each case. Commissioner v. Soliman, 506 U.S.    , 113 S. Ct. 701, 706 (1993). *140 The two primary considerations in deciding whether a taxpayer may treat a home office as a principal place of business are: (i) The relative importance of the activities performed at, and (ii) the time spent at each business location. Id. The place where the taxpayer contacts clients is often a very important indicator of the principal place of business. Id. The necessity to the business of the functions performed at home is not entitled to much weight in deciding whether a taxpayer may deduct home office expenses. Id. at 707. We next examine the two Soliman factors. i. Relative Importance of the Activities Performed at Each Place of Business
Steinberg's home office was the most important location for his business because that is where he met with clients, did research, and kept files and a computer. He met with a few clients at other places; however, the activities Steinberg performed at home were substantially more important that those performed elsewhere. ii. Time Spent at Each Place of Business
Steinberg had no other regular place of business. The record shows that he did some, but not much traveling in his business. *141 We believe that Steinberg spent more time doing business at his home office than he did elsewhere. We conclude that Steinberg may deduct his home office expenses. Steinberg's house had about 2,500 square feet and his home office had 150 (6 percent) to 200 (8 percent) square feet. Petitioners may deduct as home office expenses 7 percent of their utilities, including amounts they paid to FP & L, as home office expenses paid after July 1987. However, petitioners may not deduct as a home office expense any part of the $ 758.99 that they paid to FP & L before July 1987. g. Utilities and Telephone Expenses
In addition to the 7 percent of utilities for the home office, petitioners contend that they may deduct $ 2,694, and respondent argues that they may deduct $ 83, for Steinberg's utilities and telephone expenses for 1987. Dr. Sills paid $ 108.68 to Selkirk Cable TV in 1987 to receive the Financial News Network in Steinberg's home office. Petitioners may deduct these payments as Steinberg's business expenses for 1987. Petitioners contend that they may deduct $ 605.28 that they paid to Southern Bell before July 1987, for telephone services at petitioners' Galt Ocean Drive *142 home. Steinberg had not started his business then and never operated it at that house. We are not convinced these are business expenses. Petitioners may deduct $ 158.44 they paid to Southern Bell for Steinberg's office telephone, (305) 564-0024. Petitioners contend that $ 10.84 that they paid to Sprint 60 Photo by a check written by Dr. Sills is a telephone expense. We disagree because Steinberg testified that it was for photographs Dr. Sills needed to apply to be a staff specialist physician at various hospitals in Broward County. h. Postage Expenses
Petitioners contend that they may deduct $ 44 and respondent argues that they may not deduct any amount for Steinberg's postage expenses for 1987. Petitioners' two 1987 postage expenses are not deductible as an expense of Steinberg's business because they were paid to the post office before July 1987. Petitioners claim a deduction for amounts they paid to rent a mail box in a U.S. Post Office. Petitioners paid $ 12 on March 12, 1987, and $ 22 on September 12, 1987. It appears that Steinberg had a post office box both before and after he started his business. There is no indication how much he used the post office box *143 for personal compared to business purposes after he started the business. We conclude that petitioners may not deduct any amount for postage expenses for Steinberg's business in 1987. i. Promotional Expenses
Petitioners contend that they may deduct $ 394 and respondent argues that they may not deduct any amount for Steinberg's 1987 promotional expenses. Petitioners paid $ 17.98 to Gaps by a check which had "entertainment expense" written in the memo section. However, neither Dr. Sills nor Steinberg could recall the purpose of the payment. Petitioners paid $ 393.75 to Arango. "Promo items" is written in the memo section. However, Steinberg testified it was for a couch. We conclude that petitioners may not deduct these payments as Steinberg's promotional expenses in 1987. 3. Steinberg's Financial Consulting Business Deductions for 1988
a. Advertising Expenses
Petitioners contend that they may deduct $ 1,200 for Steinberg's advertising expenses in 1988. Respondent allowed no amount. Petitioners contend that the purpose of a $ 1,200 check written to and by Steinberg on August 5, 1988, [3] was to provide funds to pay advertising costs for his business. The memo *144 on the check states "Direct Mail Adv. Exp." Steinberg deposited that check into another of petitioners' accounts. Steinberg testified that he used the funds for a newsletter called the Steinberg's Common Sense Investor. We believe from Steinberg's testimony that he spent some money on the Steinberg's Common Sense Investor. However, we do not know how much he spent, and we have no basis for estimating that amount. Petitioners did not provide any invoices, receipts, or canceled checks made payable to third parties. This is not sufficient to prove that Steinberg paid $ 1,200 for advertising. b. Car and Truck Expenses
Petitioners argue that they may deduct $ 2,341 for Steinberg's car and truck expenses for 1988. Respondent allowed no amount. We sustain respondent for the same reasons we denied a deduction for Steinberg's 1987 automobile *145 and truck expenses (see paragraph B-2-b, above). [4]
c. Insurance Expense for Home Office
Petitioners contend that they may deduct $ 131 for Steinberg's home office insurance expenses for 1988. That amount is 10 percent of the amount they paid for homeowners' insurance in 1988. We have found that petitioners may deduct 7 percent of the home utilities expenses they incurred after July 1987 for Steinberg's home office. For the same reasons, petitioners may deduct $ 91.52 or 7 percent of $ 1,305.50, the cost of their homeowners insurance. d. Office Expense
Petitioners contend that they may deduct $ 1,186 for Steinberg's office expenses for 1988, including postage, automobile, and computer expenses. Respondent allowed $ 9.30. Petitioners argue that Steinberg paid $ 48.30 for postage for his business. Respondent *146 concedes that Steinberg paid $ 2.20 and $ 7.10 to the U.S. Postal Service for his business. Petitioners also claim that $ 39 they paid by check dated March 1, 1988, payable to M. Schmidt "for Vo. 2 & 3 VHS", is a deductible business expense. Steinberg could not remember the purpose of this payment. We have denied deductions for automobile and truck expenses for 1988 (see supra paragraph B-3-b), and petitioners have not convinced us that they paid $ 703.71 for computer expenses related to Steinberg's business. Steinberg's testimony about these expenses was vague, and the checks in evidence do not support the amounts claimed. We conclude that petitioners may deduct no more than the amount allowed by respondent for Steinberg's office expense in 1988. e. Utilities and Telephone Expenses
Petitioners contend that they may deduct $ 616 for Steinberg's utility and telephone expenses for 1988. Respondent allowed $ 368 which Steinberg paid to Southern Bell with checks which had "305 564-0024" written in the memo section. Petitioners contend that they may deduct $ 47.51 that Dr. Sills paid to Microtel as an expense of Steinberg's business. There is no evidence that the $ 47.51 *147 paid to Microtel related to Steinberg's business. We hold that petitioners may not deduct more than respondent allowed for Steinberg's utilities and telephone expenses in 1988 in addition to the 7 percent allowance for the home office. 4. Dr. Sills' Business Deductions for 1988
a. Section 179 Expense
Petitioners contend that they may deduct $ 10,000 under section 179 for property they bought for Dr. Sill's medical practice in 1988. Respondent argues that petitioners do not qualify for the section 179 deduction. We agree with respondent. Section 179 permits a taxpayer to elect to treat the cost of section 179 property up to $ 10,000 as an expense. Sec. 179(a) and (b). A taxpayer must make an irrevocable election on his or her income tax return to be eligible for section 179. Sec. 179(a), (c); LaPoint v. Commissioner, 94 T.C. 733, 735-736 (1990). Petitioners did not make the requisite election. Therefore, petitioners may not use section 179. Petitioners argue that they did not know about section 179 when they filed their returns for the years in issue. This does not relieve petitioners of the requirement to make the election on *148 their return. See Harbour-Longmire Co. v. Commissioner, 18 B.T.A. 33, 38 (1929) (taxpayer unsuccessfully contended that it need not elect to file consolidated returns because it did not know an election was required). b. Depreciation
Petitioners argue that they may deduct $ 1,567 for depreciation that they did not claim under section 179 and that they may deduct depreciation for $ 10,000 in costs claimed under section 179 if we disallowed a deduction under section 179 for Dr. Sills' medical practice in 1988. Respondent contends that petitioners may not depreciate any amount because petitioners did not prove their basis in the property or that it had a business use. We disagree with respondent. We have found petitioners' basis and purchase date of equipment Dr. Sills used in her medical practice. We conclude that petitioners may depreciate that equipment. Petitioners argue that they may deduct an additional $ 1,000 for depreciation. They argue that the payment was made with the proceeds of a $ 1,000 check payable to cash with a memo of "med. supplies". We have already allowed depreciation for equipment which Dr. Sills purchased from auctions *149 in September 1988 and for two examination tables based on this check. Also, as discussed below, we reject a part of petitioners' claim for a deduction for Dr. Sills' medical supplies that was based on this check (see paragraph B-4-g). We do not allow depreciation for the additional $ 1,000. Petitioners have not established the business purpose for Dr. Sills' payments to Air Scan, Radio Shack, and Home Depot (check No. 102). The payment to Air Scan was to install a car phone for Dr. Sills. Dr. Sills testified that her car phone is a necessity in traveling between hospitals. However, she did not establish how much business use she made of her car phone. Dr. Sills could not remember why petitioners paid $ 211.89 to Radio Shack or $ 257.36 to Home Depot. Also, Dr. Sills testified that she rented the desk and chair that petitioners seek to depreciate. We conclude that petitioners may not depreciate those items. c. Insurance Expense
Petitioners contend that they may deduct $ 8,511 for Dr. Sills' insurance for 1988. Respondent contends that petitioners may deduct $ 4,180. Petitioners may deduct the $ 3,972 Dr. Sills paid for medical professional liability insurance and *150 $ 250 she paid to Allstate for office insurance. We conclude that petitioners may not deduct the remainder of their claim for Dr. Sills' insurance expense in 1988. Dr. Sills wrote a $ 1,500 check dated December 5, 1988, with a memo stating "insurance expense", payable to Steinberg. The check was redeposited in another of petitioners' bank accounts. We are not convinced that the amount was paid for insurance. If it was used to buy insurance, it appears to have been for petitioners' personal health insurance which would not be deductible. Sec. 262. Thus, petitioners may not deduct the $ 1,500 as an insurance expense. Petitioners argue that they may deduct $ 1,765.66 they paid to John Hancock VLI, Provident, and Macabee's Mutual for Dr. Sills' disability insurance premiums. Courts have held that disability premiums are personal and not business expenses. Stemkowski v. Commissioner, 690 F.2d 40, 48 (2d Cir. 1982) (professional hockey player), affg. in part, revg. in part and remanding 76 T.C. 252 (1981), on remand 82 T.C. 854 (1984); Blaess v. Commissioner, 28 T.C. 710, 714-716 (1957) *151 (physician with a private medical practice). The holdings of Stemkowski and Blaess favor respondent here. Petitioners have not shown that amounts they paid Flamedco, Inc., were business expenses. We conclude that petitioners may not deduct more than $ 4,222 for Dr. Sills' insurance expenses in 1988. d. Legal and Professional Expenses
Petitioners contend that they may deduct $ 850 for accounting services for Dr. Sills' medical practice in 1988. Respondent allowed $ 474. Dr. Sills wrote an $ 850 check dated August 8, 1988, payable to Steinberg with a memo stating "accounting services July & Aug 1988". Steinberg did bookkeeping for Dr. Sills' medical practice in 1988. Respondent argues that Dr. Sills could not have paid Steinberg for his services because Steinberg began drawing unemployment compensation in August or September 1988, and Steinberg testified that he did not receive any wages from Dr. Sills. We disagree. There is no indication that the $ 850 payment was for services while Steinberg drew unemployment compensation. Rather, it appears that it was a payment for services previously rendered. We conclude that Dr. Sills paid Steinberg $ 850 by check for *152 his bookkeeping services for her medical practice. We conclude that petitioners may deduct $ 850 for legal and professional expenses of Dr. Sills' medical practice in 1988, and that Steinberg must include this amount in income. [5]
e. Office Expenses
Petitioners contend that they may deduct $ 3,504 for Dr. Sills' office expenses in 1988. Respondent allowed $ 1,951. We have carefully reviewed the evidence including each check upon which petitioners rely and the testimony about each claimed deduction and conclude that petitioners may deduct the following: $ 50 for a medical assessment; *153 $ 300 for office signs; $ 83 for diploma framing; $ 35 for air-conditioning servicing; $ 50 for baseboards; $ 9.94 for steel shelving parts; $ 8.94 (not $ 18.84) for a fire extinguisher; $ 148 for typewriter rental; $ 50 for copier stand rental; $ 169 for decorating the office; $ 35 to Office Depot for supplies; $ 25 to a carpenter, Tim Price, to install shelves; $ 162 for dead bolts and locks; $ 14.76 for a smoke detector and key blank; $ 30 to address announcements; $ 100 for office kitchen and bath supplies; $ 26 to reimburse Steinberg for office supplies; and $ 20 to Steinberg for office supplies. Petitioners may not deduct $ 102.82 for a wall unit because they returned it to Office Depot and got a refund. Petitioners contend that they may deduct $ 319 as expenses for keys, locks, and lights. Petitioners claimed and we allowed petitioners to depreciate $ 181 for lights (chandelier) (see supra chart in Findings of Fact paragraph D) based on Exhibit 129 (check No. 126). That is the only evidence petitioners cite to substantiate this deduction. They are not entitled to a double benefit for this expense. However, petitioners may deduct $ 161 they paid to American Door Co. *154 for dead bolts and locks and $ 4 they paid to Builders Square for Dr. Sills' office keys. Petitioners may not deduct, but may depreciate, costs of office furniture and equipment such as $ 274 for two storage cabinets; $ 31.50 for a medical cabinet; $ 333.63 for a file cabinet, a microwave oven, a refrigerator, and a coffee maker; and $ 94.95 for a storage cabinet as discussed above (paragraph B-4-b). Petitioners contend that they may deduct $ 113.81 they paid by check to Radio Shack to buy a telephone. The memo on the check says "telephone". Dr. Sills identified the check in her testimony, but she did not tie the use of the telephone to her medical practice and so petitioners may not deduct this expense. Petitioners contend that they may deduct $ 914 for truck rental and delivery. The record includes four checks payable to Steinberg that state in the memo "truck rental", "delivery charge", "delivery expenses", and "misc. truck & delivery exp.". The memos do not say these expenses were for Dr. Sills' business. There are no corroborating invoices, receipts, or other documents. Dr. Sills testified that she did not remember the purpose of those payments. We conclude that petitioners *155 did not establish that they had a business purpose for these expenses. Petitioners may not deduct $ 35 to install the hot water heater in Dr. Sills' office because there is no testimony or check about the amount they paid. Petitioners may not deduct $ 50 for door repair, or $ 13.95 paid to Westlake Hardware on September 26, 1988, because neither the checks nor Dr. Sills' testimony established that the expenses related to her medical practice. However, Dr. Sills' testimony about the $ 65 door buzzer for her office alarm system corroborated by check No. 170 is sufficient to allow a deduction for this amount. f. Repair Expenses
Petitioners contend that they may deduct $ 2,500 for repair expenses for Dr. Sills' medical practice for 1988. Respondent contends that Dr. Sills may deduct $ 207. Petitioners do not indicate the purpose of the claimed repairs or how they related to Dr. Sills' business. Petitioners do not cite any evidence to support their contention. Thus, we sustain respondent's determination that petitioners may deduct $ 207 for Dr. Sills' repair expenses for 1988. g. Office and Medical Supplies Expenses
Petitioners contend that they may deduct $ 5,453 *156 for Dr. Sills' office and medical supplies for 1988. Respondent contends that petitioners may deduct $ 3,764. We allow all of petitioners' claim for supplies except for four items. We disallow a claimed $ 1,000 deduction for the purchase of two examination tables because we allowed those tables to be depreciated (see supra chart in paragraph D of the findings of fact and paragraph B-4-b of the opinion). We disallow petitioners' claim for checks payable to cash for $ 15.90, $ 55.18, $ 26.38, and $ 11.64 because petitioners have not established that they spent these amounts for a business purpose. We conclude that petitioners may deduct $ 4,334 for Dr. Sills' supplies in 1988. h. Travel, Meals, and Entertainment Expenses
Petitioners contend that they may deduct $ 3,364 for travel, meals, and entertainment expenses. Respondent contends that petitioners may not deduct any amount. We agree with respondent. A taxpayer may not deduct any expense incurred for travel, including meals and lodging, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount of the expense, the time and place of the travel, *157 and the business purpose of the expense. Sec. 274(d). To comply with section 274(d), a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, or similar record such as receipts or paid bills, which, when combined, establish each element of the expense. Sec. 1.274-5T(c)(2)(i), (iii), Temporary Income Tax Regs.50 Fed. Reg. 46017, (Nov. 6, 1985). If a taxpayer lacks adequate records, then to comply with section 274(d), the taxpayer must provide a written or oral statement containing sufficient information as to each element and sufficient other corroborative evidence. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs.50 Fed. Reg. 46020 (Nov. 6, 1985). Although we believe that Dr. Sills attended medical seminars and conferences, petitioners have not met the requirements of section 274(d). Section 274(d) overrides the application of the Cohan doctrine, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), to travel and entertainment expenses. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). *158 Dr. Sills testified generally that she incurred travel expenses during 1987 and 1988 in connection with her medical practice and that Steinberg accompanied her in her travel. Petitioners did not have adequate records of Dr. Sills' business travel. For example, Dr. Sills testified that she attended the Florida Gastric Society annual meeting in Naples, Florida. Dr. Sills testified that she used funds from a $ 200 check made payable to her to help pay expenses of that trip. Dr. Sills testified that a $ 220 check payable to Steinberg with a memo stating "AC plane fare", a $ 200 check made payable to cash with a memo stating "AC trip", and a $ 500 check payable to Steinberg with a memo stating "AC trip" were used to pay expenses for a medical conference that she and Steinberg attended in Atlantic City. These checks and Dr. Sills' general testimony do not satisfy the section 274(d) substantiation requirements. Petitioners did not have any diary, log, receipts, paid bills, or detailed testimony of the amounts actually expended, and the time and place of travel. We conclude that petitioners may not deduct any amount for Dr. Sills' travel in 1988. i. Utilities and Telephone Expenses
*159 Petitioners contend that they may deduct $ 2,013 for Dr. Sills' utilities and telephone expenses in 1988. Respondent contends that petitioners may deduct $ 1,714. Petitioners may deduct $ 902 for payments to Southern Bell for Dr. Sills' business telephone line, numbers 493-8800 and 493-8834. Petitioners may also deduct $ 400.33 for payments to FP & L for Dr. Sills' office utilities in 1988. Petitioners wrote four checks payable to Southern Bell from July to December 1988 with their home telephone number 564-4565 or 564-4878 written on the memo line. Petitioners also made payments to Cellular One for Dr. Sills' car phone and to Microtel for a long-distance service for her home telephone. Dr. Sills testified that she used her home telephone for business and that she made long-distance calls related to her practice from her car and home telephones. Petitioners did not give us any basis to allocate those payments between business and personal expenses, and did not offer any telephone bills, logs, or call records into evidence. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985) (Court must have some basis to allocate payments under the Cohan *160 rule). Thus, petitioners may not deduct these amounts as business expenses for Dr. Sills' medical practice in 1988. j. Promotional Expenses
Petitioners contend that they may deduct $ 1,574 for Dr. Sills' promotional expenses in 1988. Respondent allowed no amount. Dr. Sills had a party for her son's first birthday in October 1988. She invited friends who were also referring physicians. She testified that she could not remember specifically who attended the party. To deduct the expenses of a party as a business expense, a taxpayer must establish either that the party was directly related to the active conduct of his or her trade or business or that it directly preceded or followed a substantial and bona fide business discussion and was associated with the active conduct of the trade or business. Sec. 1.274-2(c)(7), (d)(1), Income Tax Regs. The taxpayer must identify and establish the business relationship with the guests. Sec. 1.274-5(b)(3), Income Tax Regs. We have held that a taxpayer may not deduct the cost of a birthday party for the taxpayer where the guests were clients of the taxpayer. Lennon v. Commissioner, T.C. Memo. 1978-176. *161 We conclude that petitioners have not established a sufficient business purpose to deduct the expenses of the party. Petitioners deducted $ 8.96 for lunch in the Northridge Medical Center dining room where she said business was discussed. This is not sufficient to deduct the meal under section 274(d). Dr. Sills bought gifts from Morrow's Nut House and P.G. Dolls that she gave to referring physicians. Dr. Sills testified generally about the gifts. This is not sufficient proof to deduct gifts under section 274(d). Section 274(d) requires a taxpayer to have adequate records or sufficient evidence to corroborate his or her own statements regarding the costs of the gifts, the date and description of the gifts, the business purpose of the gifts, and the business relationship to the persons receiving the gifts. Section 274(b) limits the deductible amount of business gifts to $ 25 per person per year. General, vague proof does not meet the rigorous requirements of section 274. Smith v. Commissioner, 80 T.C. 1165, 1172 (1983). For example, substantiation of the business relationship must be particular as to name, title, or other specific designation. *162 Dowell v. United States, 522 F.2d 708, 716 (5th Cir. 1975). Petitioners did not substantiate the names of any of the recipients of the gifts. 5. Petitioners' Schedule A Itemized Deductions for 1987
a. Points and Home Mortgage Interest
Petitioners contend that they may deduct $ 2,250 for points in 1987. Respondent determined that petitioners may deduct $ 1,500. However, respondent did not object to petitioners' proposed finding of fact that "Petitioners paid $ 2,250.00 for points at the closing/purchase of their home in 1987". We treat this as a concession by respondent that petitioner may deduct $ 2,250 as deductible points in 1987. Similarly, respondent did not object to petitioners' proposed finding of fact that they paid $ 6,813 for home mortgage interest in 1987. Thus, we treat as a concession by respondent that petitioners may deduct $ 6,813 for home mortgage interest in 1987. b. Safety Deposit Box
Petitioners contend that they may deduct $ 200 for safety deposit box rental. Respondent allowed $ 42. Petitioners cite no evidence supporting their position and we find none. Thus, we sustain respondent's position. c. *163 Unreimbursed Employee Business Expense
Petitioners contend that they may deduct unreimbursed employee business expenses for Dr. Sills of $ 8,482 for 1987. Respondent allowed $ 1,127. Petitioners claim a deduction for $ 164.29 they paid to Microtel, their long-distance carrier and $ 884.59 they paid to Southern Bell for their home telephone service. Petitioners' testimony about their business use of their home telephone was general and uncorroborated. Petitioners also claimed a deduction for these payments to establish Steinberg's business expense deductions for 1987, but we decided that petitioners could not deduct those expenses (see supra paragraph B-2-g). We conclude that petitioners may not deduct amounts they paid to Southern Bell or Microtel as itemized deductions in 1987 because we have no basis to allocate between business and personal use. Petitioners contend that they may deduct expenses related to Dr. Sills' car, such as depreciation, repairs, and automobile club dues. However, we have no basis to allocate between personal and business use of her car, and petitioners have not established their cost basis in Dr. Sills' car. Thus, we disallow petitioners' *164 claim to deduct Dr. Sills' car expenses and depreciate her car. Petitioners contend that they may deduct $ 1,782 for Dr. Sills' professional fees and dues in 1987. Petitioners include in the $ 1,782 amount they seek to deduct, a $ 775 check that Dr. Sills wrote to Plastic Surgery Assoc., dated February 16, 1988, with "unreimbursed med. asso. expenses" written in the memo section. We disallow a deduction for the $ 775 because Dr. Sills testified that this payment was for elective surgery. Petitioners may deduct $ 1,035 for the textbooks Dr. Sills bought in 1987. 6. Petitioners' Itemized Deductions for 1988
a. Contributions
Petitioners contend that they may deduct $ 1,020 for charitable contributions for 1988. Respondent allowed $ 965, based on petitioners' gift of money or property of $ 540 to the St. Vincent De Paul Stores, $ 375 to Temple Emanuel, and $ 50 to the American Heart Association, Broward County Chapter. The difference between petitioners' and respondent's position is $ 55. We disallow a deduction for $ 55 which petitioners paid by check to Jewish Family Services of Broward County dated April 4, 1988, because petitioners wrote "medical expense" in the *165 memo section and then did not testify about it. Petitioners do not explain why they may deduct any additional charitable contribution. Thus, we sustain respondent's determination and hold that petitioners may deduct $ 965 in 1988. C. Additions to Tax
1. Negligence
Respondent determined that petitioners are liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) for 1987 and under section 6653(a)(1) for 1988. Sections 6653(a)(1)(A) and 6653(a)(1) impose an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes an additional liability of 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules or regulations. Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that the underpayment on their return was not the result of negligence. Warrensburg Bd. & Paper Corp. v. Commissioner, 77 T.C. 1107, 1112 (1981). *166 Petitioners contend that they were not negligent because their errors were honest and because their circumstances were difficult. Taxpayers are required to take reasonable steps to determine the law and to comply with it. Niedringhaus v. Commissioner,, 99 T.C. 202, 222 (1992). Petitioners have not shown that their actions were reasonable or prudent. Aside from checks, many of which were paid to cash or Steinberg, petitioners kept very few records to substantiate the amounts they deducted on their returns. Petitioners have not convinced us that they were not negligent. We conclude that petitioners are liable for the additions to tax for negligence for 1987 and 1988. 2. Substantial Understatement
Section 6661(a) authorizes an addition to tax on an underpayment attributable to a substantial understatement of income tax in a taxable year. The addition to tax is 25 percent of the amount of the underpayment attributable to the substantial understatement. Sec. 6661(a). A substantial understatement for an individual exists if in a year the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the *167 return or $ 5,000. Sec. 6661(b)(1)(A). Petitioners contend that they should not be liable for this addition to tax, but they offer no theory to support their position. Thus, petitioners are liable for the addition to tax under section 6661 if the computations under Rule 155 show that their understatement is substantial under section 6661(b)(1)(A). To reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. Fifty percent of the interest due on $ 27,091.50 under sec. 6653(a)(1)(B)↩.
2. Negligence under sec. 6653(a)(1)↩.
1. Petitioners argue for the first time in their reply brief that adjustments should be made to self-employment, Social Security, and withholding taxes because they erroneously reported that Dr. Sills paid herself wages. Respondent has not had the opportunity to respond to this argument. We do not consider this argument because it is untimely.↩
2. At trial, respondent objected to admitting the computer printout, Exhibit 19, into evidence on the ground that it was prepared in 1991. We disagree. It is true that the date of Oct. 3, 1991, appears on the bottom left corner of each page. Steinberg compiled the printout for respondent's auditors in 1991, but the data had been entered contemporaneously. Respondent objected that Exhibit 19 did not qualify as a summary under Rule 1006 of the Federal Rules of Evidence.↩ Respondent said that petitioners had not provided the underlying documents. However, respondent's counsel later conceded that petitioners had provided documents which respondent mailed back to petitioner. Respondent's return card was attached to petitioners' billing and day business summary sheets. Respondent's counsel at trial could not recall whether she personally reviewed the underlying documents because petitioners had provided many documents that were not organized.
3. Petitioners relied on this check as proof of a deduction for Steinberg's 1987 postage expenses in their opening brief, but abandoned this argument in their reply brief.↩
4. We do not consider petitioners' alternative argument first raised in their reply brief, that they may deduct their car and truck expenses as an employee business expense because it is untimely.↩
5. Petitioners filed a joint return. Therefore, a deduction for any payment to Steinberg for services to Dr. Sills should be offset by the income to Steinberg and the transaction is a wash to petitioners. There is no evidence in the record that this amount is included in a Form W-2 or Form 1099. Steinberg testified that he did not receive wages from Dr. Sills. Thus, it appears that Steinberg did not report this amount as income.↩